1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR M. SANCHEZ, | ) 1:11-cv-00254-SKO |
| | ) |
| | ) **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) **SOCIAL SECURITY COMPLAINT** |
| | ) |
| v. | ) (Doc. 1) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

## I.  BACKGROUND

Plaintiff Oscar M. Sanchez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 8, 9.)  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* U.S. District Court, Eastern District of California Local Rules 301, 305.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1978, completed the 11th grade but had problems reading and spelling, and held various jobs including working as an aluminum polisher, a chemical mixer, a Christmas tree washer, and a chicken parts cleaner. (Administrative Record ("AR") 76-78, 80, 229, 242, 243-50, 574-75, 581-87.) On May 3, 2005, Plaintiff filed applications for DIB and SSI, alleging disability beginning on January 1, 2005, due to discogenic and degenerative disorders of the back and a learning disorder. (AR 80-81, 229-34.)

### A. Relevant Medical Evidence [2]

On July 11, 2005, Plaintiff was seen by Gurmej S. Dhillon, M.D., for an internal medicine examination. (AR 158-63.) Plaintiff's chief complaints were lower back pain and a learning disability. (AR 158.) Plaintiff stated that "he has had a learning disability since he was very young. He went to a special school with special classes and completed grade 11, but he cannot read or write." (AR 158.) Plaintiff further informed Dr. Dhillon that "[n]obody will give [Plaintiff] any job because he cannot read and write or comprehend. He can't even sign an application." (AR 158.) Dr. Dhillon conducted a series of tests and noted that Plaintiff's "physical complaint is not consistent with the physical examination" and, as such, Dr. Dhillon could not "put [Plaintiff] on any physical activity limitation on the basis of [the] examination." (AR 163.) As for Plaintiff's mental capabilities, Dr. Dhillon found that:

> Mental status examination revealed [Plaintiff] was alert and oriented. He made some calculations like 2+2 and 5+5 and then further 7+7, he couldn't do it. He was able to do serial minuses, 5 from 100, and 95 and 90, but he refused to add 3 to 90. He was able to tell 2 x 2, but he refused to do 3 x 3 and 7 x 7. He stated he does not know. He was able to tell his date of birth, which is 09/25/78. He refused to tell his brother's age and date of birth. He was able to tell what he ate in the morning as hot dogs. He was able to tell today's date, month and year. When he was asked who is the President of the United States, he mentioned Martin Luther King. On mental status examination, whether it is subjective or real is hard . . . to tell.

AR 162.

---

[2] Plaintiff's brief raises arguments related to the administrative law judge's ("ALJ") determination of Plaintiff's residual functional capacity as it relates to Plaintiff's alleged learning disability, specifically his ability to read and write. (*See* Doc. 16.) As such, the Court will only consider the medical evidence related to Plaintiff's mental limitations, as Plaintiff has waived any arguments concerning the ALJ's decision as to physical impairments. See *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (explaining that arguments not raised before the district court are generally waived).

1  Dr. Dhillon stated that "[a] psychiatric evaluation for [Plaintiff's] learning disability will be

2  helpful." (AR 163.)

3  On July 13, 2005, Richard Engeln, Ph.D., performed a psychological evaluation of Plaintiff.

4  (AR 164-76.) Plaintiff stated that he was applying for disability because "he has problems reading,

5  and spelling, and with math. He, also, has bad headaches." (AR 164.) Dr. Engeln was informed

6  by Plaintiff that he was hit by a car when he was 17 years old and in high school; "[h]e was

7  hospitalized for 4 months" and "stopped going [to high school] after he got hit by the car."

8  (AR 164.) Dr. Engeln noted Plaintiff's history, including that Plaintiff was living with his sister at

9  that time and that he had completed a 30-day residential drug rehabilitation program six months prior

10  for methamphetamine use; the program, however, "was not a court referral." (AR 165.) Plaintiff

11  indicated that he worked for the Indian Motorcycle Company for three months "but lost the job when

12  he failed his drug test." (AR 165.) Plaintiff also worked at New Agent Chrome but "apparently lost

13  that job because of anger control issues." (AR 165.)

14  Dr. Engeln performed several psychological tests, including the Wechsler Adult Intelligence

15  Scale III, Wechsler Memory Scale III, Bender-Gestalt Test, Trails A and Trails B, Rey 15 Item

16  Memory Test II, and a Mental Status Exam. (AR 164.) Dr. Engeln determined that Plaintiff

17  "presented with no evidence of any mental or emotional illness. Verbal expression was easily

18  understood, appropriate in form and association . . . [and his] interview presentation suggested at

19  least mid borderline intellectual skills." (AR 167.) However, Dr. Engeln also noted that "[i]n

20  contrast, obtained intellectual measurements [of] verbal intelligence and visual intelligence [were]

21  low in the mild range of mental retardation. These appeared to be underestimates of abilities instead

22  reflecting attitudinal-emotional issues." (AR 167.) Dr. Engeln found that the following areas were

23  in the moderate range of mental retardation: working memory requiring repetition and reflection of

24  auditory-visual stimulus (although Dr. Engeln stated that the result was "globally inconsistent with

25  [Plaintiff's] presentation") and delayed visual memory. (AR 167.) The following areas were in the

26  range of low average findings: delayed auditory memory and immediate visual memory. (AR 167.)

27  The Bender-Gestalt reproductions were in the high borderline to low average range in terms of

28  performance quality. (AR 167.)

Dr. Engeln determined that Plaintiff's reading comprehension was at the beginning second grade level, his spelling abilities were are the mid-first grade level, and his arithmetic skills were at the end third grade level. (AR 167.) Further, "Trails A, a very simple task, was done with multiple visual concentration errors. Trails B was rejected by the patient as too difficult." (AR 167.) Dr. Engeln noted that Plaintiff's "[r]esponse to Rey was positive for exaggeration" and found, overall, that "[b]ecause of [Plaintiff's] exaggeration, [Dr. Engeln was] unable to say what [Plaintiff's] abilities actually are." (AR 167.) Dr. Engeln opined:

> Verbally, cognitively, and socially [Plaintiff] is capable of job adjustment in a context where instructions are unidimensional, at an entry level position where instructions are simple and unidimensional, and normal supervision is provided. Concentration and social skills are adequate for work adjustment. He would be able to receive instructions that are one-to-two steps in nature, but not technical or complex instructions. He is in a reported recovery phase of methamphetamine abuse. Methamphetamine abuse has been the most intrusive dimensions of his life adjustment pattern.

(AR 168.)

On August 23, 2005, Archimedes Garcia, M.D., provided a psychiatric review of the medical evidence in the file. (AR 177-79.) Dr. Garcia concluded that Plaintiff's impairment of mental retardation was not severe. (AR 177, 179.)

**B.     Administrative Proceedings**

**1.     First Administrative Hearing and Decision**

Plaintiff's applications for DIB and SSI benefits were denied on August 26, 2005, and again on reconsideration on January 6, 2006. (AR 59-64, 68-72.) On January 11, 2006, Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on March 14, 2007, a hearing was held before ALJ Patricia Leary Flier. (AR 44, 236-75.) The ALJ rendered a decision on June 19, 2007, finding Plaintiff not disabled. (AR 12-22.)

**a.     March 14, 2007, Hearing**

At the first administrative hearing held on March 14, 2007, Plaintiff testified that the highest grade in school he had completed was the 11th grade; he had not completed a GED because he had "problems reading and spelling" and would get "frustrated." (AR 242.) Plaintiff stated that he was unable to obtain a driver's license because he could not pass the written test due to his difficulties

in reading and spelling, and was also unable to pass the oral test, despite having taken the exam numerous times. (AR 241.) Plaintiff testified that while he could read "some words," there were other words that he "tried to read" but just "cannot," including reading job applications. (AR 263.) Plaintiff also stated that he had attempted to go back to school to learn to read and write, but that he "just . . . can't do it." (AR 262.)

Plaintiff said that he had last worked in October 2006 at New Age Metal, where he polished aluminum "bike" and "go-cart" parts. (AR 243.) His brother had helped to obtain that job and oversaw his work. (AR 244.) Plaintiff stopped working at that position after he was injured when his shirt was caught in a machine. (AR 244.) Plaintiff "didn't want to handle [working there] anymore" because he had become "scared" and "panicky." (AR 245-46.) Before working at New Age Metal, Plaintiff worked at Aqua Clor, where he would mix and bottle bleach and ammonia. (AR 247.) Despite wearing a mask, Plaintiff testified that the fumes aggravated his lungs, forced him to choke and gag, and caused headaches. (AR 247.) Plaintiff reported that his brother had also helped him to obtain that job and again assisted him with his work. (AR 247-48.) Plaintiff stated that he left this job because of "too much hassle with the boss." (AR 248.)

Plaintiff worked at Indian Motorcycle, where he would "clean parts." (AR 251.) Plaintiff's family got him the job and his brother worked there. (AR 251.) Plaintiff was "sucked into the machine" and broke his arm. (AR 251.) Plaintiff stated that he also worked at several temporary jobs, including "washing" Christmas trees, cleaning and loading chicken parts at Zacky Farms, cleaning houses, and working at Foster Farms. (AR 249-50.) Plaintiff testified that he was unable to continue employment at these jobs due to pain in his back. (AR 249-51.) He also attempted to get work through temporary agencies such as Labor Ready, where he was unable to pass their reading and math test, and Plus Group, where he was laid off for being "too slow." (AR 251-52.) Plaintiff also did landscaping at Mountain View Cemetery, a job that he obtained through his uncle, who would supervise him. (AR 252-53.)

Plaintiff indicated that his inability to read and write hindered his job prospects, and that he had difficulty learning new things because he would "forget . . . real fast." (AR 253-54.) Plaintiff testified that he had "a drug problem" but that he grew "tired of doing drugs" and, with his sister's

assistance, he entered a drug rehabilitation program. (AR 258.) At the time of the March 14, 2007, hearing, he had been clean for 16 months. (AR 258.)

Plaintiff's sister Rachel Cervantes testified at the hearing that their brother Raymond would "take care of" Plaintiff at his various jobs and "train him constantly," because Plaintiff would "wander off or . . . not pay[] attention." (AR 266.) She believed that Plaintiff needed "special help" because he "tried and tried to do things on his own and it's very depressing to see that he can't." (AR 269.)

Vocational expert ("VE") Cheryl Chandler testified that all of Plaintiff's previous employment was unskilled and ranged from light to medium work. (AR 271.) The ALJ posited several hypotheticals to the VE. The first one assumed a person Plaintiff's age, educational background and work history with no exertional limitations but limited to simple one-to two-step tasks where reading and writing were not required. (AR 271-72.) The VE opined that such a person could perform some of Plaintiff's past relevant work, such as meat cutting, laborer, polishing and grounds keeping work. (AR 272.)

Hypothetical two assumed a person limited to medium work with simple, repetitive tasks, and one- to two-step instructions, and no ability to read or write. (AR 272.) The VE stated that such a person could perform the jobs indicated for hypothetical one, and could also perform packaging and auto dealer jobs. (AR 272.)

In hypothetical three, the ALJ posed the prior limitations but limited the assumed person to light work. (AR 272-73.) The VE stated that only Plaintiff's past job as a meat cutter would be classified as light and remain, but that Plaintiff could perform other jobs such as hand packager and machine feeder. (AR 272.) The VE testified that all of the above jobs were consistent with the Dictionary of Occupational Titles ("DOT"). (AR 272-73.)

Hypothetical four posed the same limitations but added that the assumed individual was unable to relate appropriately to supervisors. The VE testified that such a person could not perform any of Plaintiff's past relevant work or any other work. (AR 273.) Plaintiff's counsel asked about a hypothetical based on hypothetical four with the added restriction that the person would not be able

to maintain a normal pace and required additional supervision.  (AR 273-74.)  The VE testfied that there would be no jobs available for such a person.  (AR 274.)

### b.   June 19, 2007, ALJ Decision

On June 19, 2007, the ALJ issued a decision finding Plaintiff not disabled since January 1, 2005, the alleged disability onset date.  (AR 12-22.)  Specifically, the ALJ found that (1) Plaintiff met the insured status requirements of the Act through December 31, 2007; (2) Plaintiff had not engaged in substantial gainful activity since January 1, 2005, the alleged disability onset date; (3) Plaintiff had impairments of lumbar disc disease, borderline intellectual functioning, a learning disorder, and a history of substance abuse in remission based on the requirements in the Code of Federal Regulations; (4) Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff had the residual functional capacity ("RFC")[3] to perform medium work involving simple and repetitive one- to two-step instructions where reading and writing are not required; (6) Plaintiff was unable to perform past relevant work; (7) Plaintiff was defined as a younger individual on the alleged disability onset date; (8) Plaintiff had a limited education and was able to communicate in English; (9) the transferability of job skills was not at issue because Plaintiff's past relevant work was unskilled; (10) there were jobs that exist in significant numbers in the national economy that Plaintiff could perform; and (11) Plaintiff had not been under a disability as defined in the Social Security Act since January 1, 2005, through the date of the decision.  (AR 17-22.)

Plaintiff sought review of the ALJ's decision before the Appeals Council.  On September 9, 2008, the Appeals Council denied review.  (AR 5-11.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1        **2.      March 12, 2010, District Court Decision**

2        On October 22, 2008, Plaintiff filed a complaint in the United States District Court, Eastern

3   District of California, seeking review of the ALJ's decision in case no. 1:08-cv-01627-JLT.  (Doc.

4   2.)  On March 12, 2010, the court issued an order in favor of Plaintiff and remanded the case to the

5   Commissioner for further consideration.  (Case no. 1:08-cv-01627-JLT, Doc. 21.)[4]

6        The court found that the ALJ erred by failing to obtain an explanation for the conflict

7   between the VE's opinion and the DOT.  (Case no. 1:08-cv-01627-JLT, Doc. 21, 11:12-14:18.)

8   Specifically, the court determined that the ALJ's conclusion that Plaintiff was capable of performing

9   other work, particularly the jobs of hand packager and automobile detailer, was in error because the

10  DOT states that such positions require the ability to read and write and the ALJ's RFC indicated that

11  Plaintiff was unable to read or write.  (Case no. 1:08-cv-01627-JLT, Doc. 21, 11:14-14:18.)  The

12  district court found that:

13
14          At the hearing, after the VE gave her opinion with respect to hypothetical two (which
            was incorporated by the ALJ in her RFC finding), the ALJ asked the VE if her
15          findings were "consistent" with the DOT. AR at 272. The VE responded simply "Yes,
            Your Honor." Id. No further questioning or explanation was sought on this point.
16          This was inadequate. While the ALJ asked if the VE's opinion was consistent with
            the DOT descriptions, she did not seek any explanation despite what appear, at the
17          very least, to be discrepancies between the restrictions in the hypothetical and the
            requirements for such work as described in the DOT. For instance, despite the
18          limitation to simple one and two-step tasks, the ALJ failed to ask the VE how this
            was consistent with a DOT requirement that a job holder at a Reasoning Level 2
19          occupation have the ability "to carry out detailed written or oral instructions." In
            addition, the ALJ failed to solicit any explanation as to how Plaintiff's inability to
20          read or write would permit him to function in positions classified by the DOT as
            requiring the ability to "[r]ecognize the meaning of 2,500 (two- or three-step syllable)
21          words.  Read at rate of 95-120 words per minute. Compare similarities and
            differences between words and between series of numbers."

22  (Case no. 1:08-cv-01627-JLT, Doc. 21, 13:6-19 (citations omitted).)

23       The court stated that while the VE may have been able to reconcile the apparent conflict and

24  discrepancies, the ALJ committed error because the VE had not been asked to provide such a

25  reconciliation.  (Case no. 1:08-cv-01627-JLT, Doc.21, 13:20-21.)  The court noted that "[w]hile a

26
27  _____
        [4] The citations used in this order to refer to the prior district court judgment are the case and docket numbers
28  indicated on the docket for the United States District Court, Eastern District of California.  The case is also available at
    Westlaw at *Sanchez v. Astrue*, 08-CV-1627-JLT, 2010 WL 923641 (E.D. Cal. Mar. 12, 2010).

claimant is not per se disabled simply because he or she is illiterate, 'in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation.'" (Case no. 1:08-cv-01627-JLT, Doc. 21, 13:21-24 (citation omitted).)  The court found that "no such explanation was attempted" and that, "[a]t the very least, the ALJ needed to ask the VE for further explanation in light of the apparent differences."   (Case no. 1:08-cv-01627-JLT, Doc. 21, 13:24-15:1 (citing *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)).)

The district court also questioned whether the hypotheticals used by the ALJ were appropriate:

> Finally, although not specifically raised by Plaintiff on appeal, somewhat related to this issue is the question of the sufficiency of the hypothetical(s) put by the ALJ to the VE. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) (An ALJ posing a hypothetical question to a vocational expert "'must set out all the limitations and restrictions of the particular claimant.'" Although, testing revealed Plaintiff had IQ scores indicating "mild" to "moderate" mental retardation (including a Full Scale IQ of 58), see AR at 166, no specific mention of this is included in any of the hypotheticals put to the VE. Rather, the ALJ simply asked the VE to consider a person "same age as claimant, same educational background, same work history. . . . limited to medium work and . . . limited to simple and repetitive tasks, one to two-step job instructions where reading and writing is not required." Id. at 271, 272. Since Plaintiff's educational background indicated an eleventh grade education, it is not clear that the VE, without fuller explanation, truly appreciated all Plaintiff's functional limitations in expressing her opinions. This point is all the more relevant, given that when an additional factor where the person is "unable to relate appropriately to supervisors" is incorporated into the hypothetical, the VE opined that such a person could perform no work. Id. at 273. On remand, the ALJ should consider whether revision of her hypotheticals to the VE would be appropriate.

(Case no. 1:08-cv-01627-JLT, Doc. 21, 14:22-28, n. 7.)

**3.      Second Administrative Hearing and Decision**

On April 3, 2010, the Appeals Council remanded this matter to the ALJ "for further proceedings consistent with the order of the [district] court." (AR 302.) Upon remand, the ALJ held another hearing on October 1, 2010, and rendered a second decision on October 22, 2010, also finding against Plaintiff.  (AR 276-288, 571-607.)[5]

---

[5] Although additional medical records were admitted into evidence and considered by the ALJ (*see* AR 285), these records did not discuss Plaintiff's mental limitations and, as such, are not relevant to the issues currently being considered by the Court.

### a.   October 1, 2010, Hearing

At the hearing held on October 1, 2010, Plaintiff and VE Judith Najarian testified. (AR 571-607.) Plaintiff testified that he had been injured on the job at both New Age Metal and Indian Motorcycles, but that he did not pursue a workers' compensation claim because he could not understand the paperwork. (AR 574-76.) Plaintiff indicated that he was injured in 2009 when he was hit by a car, but he could not recall where that happened. (AR 577.) Plaintiff testified that he received food stamps but not general relief, because "they wanted [him] to go there for work," but he could "not lift for work" because he had been "having back problems and headaches." (AR 578.) He also was unable to complete the applications. (AR 578.)

Plaintiff stated that his family helped him to obtain work and that he had "never got a job on [his] own." (AR 580.) His inability to procure his own employment was due to his "reading problems," "spine problems,"and   "headaches," and also because he would get "mad" and "frustrated." (AR 580.) Plaintiff testified that he worked at Indian Motorcycles from 2000 to 2002, although he also stated he did not actually remember how long he had been employed there. (AR 582.) He was cleaning and polishing aluminum motorcycle parts on a machine, but he would get "frustrated" and "really didn't want to do that" because "it was just a boring job" and he was "just going way out there for minimum wage." (AR 581-83.) Plaintiff stated that was unable to keep up an adequate pace at the polishing job because he would "sometimes . . . forget." (AR 585.) Plaintiff testified that he stopped working at Indian Motorcycle Company because he was "hurt," but also stated that the "failed [his] drug test." (AR 586-87.) Plaintiff stated that while working at his last position in 2006 he was no longer on drugs, but he still had a hard time keeping up with work requirements because he would be "frustrated" and was "too slow." (AR 587.) Plaintiff stated that while he was working, people would need to remind him and tell him how to do his job. (AR 592.)

Plaintiff testified that he was in special education classes in school "[a]ll the way through the 11th grade," but he did not complete high school because he had been hit by a car. (AR 588-89.) Plaintiff said that he could not read the newspaper, and that he could recognize street signs by their symbols but could not read them. (AR 589-90.) Plaintiff stated that he could not read a children's book or subtract numbers. (AR 590.)

At the time of the hearing, Plaintiff was living with his sister, who assigned him chores including taking out the trash. (AR 590-91.) Plaintiff testified that he would take out the trash "every night," but that he would "sometimes . . . forget" and his sister would remind him "all the time." (AR 591.) Plaintiff said that he had been forgetting to do things his "whole life." (AR 594.) Plaintiff stated that he would also clean the living room, do dishes, vacuum, and go grocery shopping with his sister once a month. (AR 594.)

Plaintiff testified that he had been on welfare, but he did not remain on welfare because working was a requirement. (AR 599.) Plaintiff said he was unable to work because it was "hard for [him] to read and spell" and because he "could not keep a job" due to "headaches or backaches and stuff like that." (AR 600.)

The VE testified that Plaintiff's prior jobs were light and medium with a specific vocational preparation ("SVP") level of 2. (AR 600.) The VE posed a hypothetical for an individual of the same age, educational background, and work history, who was limited to a medium exertional level and simple repetitive tasks and could do jobs where the ability to read greater than beginning second grade or write greater than the mid-first grade was not required. (AR 601.) The VE testified that such a person would be able to do Plaintiff's prior work as a cleaner/polisher and a cleaner because the DOT did not require reading skills for those positions. (AR 602.) The VE also stated that there were additional jobs that could be performed, including box bender, dishwasher, and auto service steamcleaner, but reduced the number of jobs available in those categories by 20 percent according to the specific occupation selector to "accommodate for those jobs where there is some reading and writing involved." (AR 603.) The VE stated that these jobs were "compatible" with the DOT. (AR 604.)

In the second hypothetical, the ALJ posed the prior limitations as in hypothetical one as to the individual's age, background, education, and ability to work at a medium exertional level, but limited the jobs to those requiring one- to two-step tasks and where ability to read greater than beginning second grade or write greater than the mid-first grade was not required. (AR 604.) The VE testified that such a person could not perform Plaintiff's past relevant work because that work required more than one- or two-steps, but stated that the box bender position would be available and

that there were other jobs available such as a greens tier and battery stacker, both of which required

a 90 percent reduction in the number of jobs to accommodate the reading and writing requirements.

(AR 604-05.)  As such, after the VE accounted for the reading and writing accommodation, there

were 7,616 box bender jobs, 2,265 greens tier jobs, and 2,537 battery stacker jobs in California that

such a hypothetical person could perform.  (AR 602-05.)

The third hypothetical was the same as number two, but assumed the individual could not

concentrate in two-hour increments; the VE testified that there were no jobs available.  (AR 606.)

The VE also stated that employers would not assign extra supervision to maintain a job at an

unskilled level.  (AR 606.)

### b.    October 22, 2010, ALJ Decision

On October 22, 2010, the ALJ issued a decision finding Plaintiff not disabled since January

1, 2005, the alleged disability onset date.  (AR 276-301.)   Specifically, the ALJ found that

(1) Plaintiff met the insured status requirements of the Act through December 31, 2009; (2) Plaintiff

had not engaged in substantial gainful activity since January 1, 2005, the alleged disability onset

date; (3) Plaintiff had severe impairments of lumbar disc disease, borderline intellectual functioning,

a learning disorder, a history of substance abuse in remission, and a history of left leg fracture in

1996 with residual mild degenerative joint disease based on the requirements in the Code of Federal

Regulations; (4) Plaintiff did not have an impairment or combination of impairments that met or

equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff

had the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently, sit, stand and/or walk

six hours in an eight-hour day, and perform work involving one- to two-step simple, repetitive tasks

where reading above the 2nd grade level and writing above the 1st grade level was not required;

(6) Plaintiff was unable to perform past relevant work; (7) Plaintiff was defined as a younger

individual on the alleged disability onset date; (8) Plaintiff had a limited education and was able to

communicate in English; (9) the transferability of job skills was not at issue because Plaintiff's past

relevant work was unskilled; (10) there were jobs that exist in significant numbers in the national

economy that Plaintiff could perform; and (11) Plaintiff had not been under a disability as defined

in the Social Security Act since January 1, 20005, through the date of the decision.  (AR 281-88.)

The October 22, 2010, ALJ decision represents the final decision of the Commissioner. (AR 277.)

**C.    Plaintiff's Current Appeal**

On February 14, 2011, Plaintiff filed the current complaint before this Court seeking review of the ALJ's decision.  (Doc. 1.)  Plaintiff contends that the ALJ erred by (1) failing to comply with the district court's order on remand and thus violated the law of the case and the rule of mandate, and (2) accepting testimony from the VE concerning Plaintiff's ability to perform work beyond his RFC with "accommodation."  (Doc. 16.)

### III.  SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV.  APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to

1    last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

2    1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or

3    impairments must result from anatomical, physiological, or psychological abnormalities that are

4    demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

5    such severity that the claimant is not only unable to do his previous work, but cannot, considering

6    his age, education, and work experience, engage in any other kind of substantial, gainful work that

7    exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

8          The regulations provide that the ALJ must undertake a specific five-step sequential analysis

9    in the process of evaluating a disability. In the First Step, the ALJ must determine whether the

10   claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).

11   If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

12   or a combination of impairments significantly limiting him from performing basic work activities.

13   *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the

14   claimant has a severe impairment or combination of impairments that meets or equals the

15   requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.*

16   §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant

17   has sufficient RFC despite the impairment or various limitations to perform his past work. *Id.*

18   §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show

19   that the claimant can perform other work that exists in significant numbers in the national economy.

20   *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in

21   the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094,

22   1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

23                            **V. DISCUSSION**

24   **A.      The Law of the Case and the Rule of Mandate**

25          Plaintiff contends that the ALJ failed to comply with the district court's order upon remand

26   requiring the ALJ to inquire of the VE whether Plaintiff could perform work in light of the limitation

27   that he could not read or write. (Doc. 16, 5:12-16.) Plaintiff asserts that the ALJ instead altered

28   Plaintiff's RFC, finding that he was limited to work where reading above the second grade level and

14

writing above the first grade level were not required, and based the hypotheticals to the VE on those limitations, thus violating the law of the case and the rule of mandate by considering issues that were not authorized or expressly permitted by the district court's decision.  (Doc. 16, 5:18-6:16.) Defendant asserts that the ALJ complied with the order of remand by revising the RFC and the hypothetical to the VE and explaining in more detail how the VE's testimony is consistent with the DOT.  (Doc. 18, 5:6-7:21.)

### 1.     Legal Standard

The United States Supreme Court has determined that:

> Where a court finds that the [Commissioner] has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed . . . .  Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.

*Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1989) (citations omitted).

Under the law of the case doctrine, the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case. *See, e.g., United States v. Lewis*, 611 F.3d 1172, 1179-80 (9th Cir. 2010); *see also Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case"). "[A]n inferior court 'is bound by the [appellate court's] decree as the law of the case; and must carry it into execution, according to the mandate.'" *Vizcaino v. U.S. District Court*, 173 F.3d 713, 719 (9th Cir.1999) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)).

The rule of mandate doctrine is a variant of the law of the case doctrine. *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1214 (C.D. Cal. 2005). Under the rule of mandate doctrine, a lower court receiving a mandate "'cannot vary it or examine it for any other purpose than execution.'" *United States v. Cote*, 51 F.3d 178, 181 (9th Cir.1996) (citing *In re Sanford Fork & Tool Co.*, 160 U.S. at 255). "The rule of mandate requires that, on remand, the lower court's actions must be consistent with both the letter *and the spirit* of the higher court's decision." *Ischay*, 383 F. Supp. 2d at 1214

1  (citing *Quern v. Jordan*, 440 U.S. 332, 347 n. 18 (1979)); *see also Almarez v. Astrue*, No. EDCV
2  09-00140-MAN, 2010 WL 3894646, at *3, n. 5 (C.D. Cal. Sept. 30, 2010).

3         District courts within the Ninth Circuit have applied the law of the case doctrine and the rule
4  of mandate doctrine to social security cases and found that reversal was warranted when the
5  subsequent ALJ decision exceeded the scope of and/or contravened a district court's remand order.
6  *See, e.g.*, *Ischay*, 383 F. Supp. 2d at 1218-19 (finding that the ALJ had violated the law of the case
7  doctrine and exceeded the scope of the mandate by reconsidering his prior step one through step four
8  findings because the initial decision had determined that the claimant was not disabled at step five);
9  *Ruiz v. Apfel*, 24 F. Supp. 2d 1045, 1050 (C.D. Cal. 1998) (finding that an "order vacating the prior
10 decision and remanding the case 'for further proceedings consistent with the order of the court' [did
11 not] suggest that review beyond the scope of the court's order was permitted or contemplated");
12 *Holst v. Bowen*, 637 F. Supp. 145, 146-47 (E.D. Wash. 1986) (finding that the district court's "order
13 of remand necessarily assumed the validity of the finding that claimant was disabled" and the ALJ's
14 subsequent order finding the claimant not disabled violated the "law of the case [because the finding
15 was] not subject to tampering in further administrative proceedings"); *Almarez*, 2010 WL 3894646,
16 at *5 (finding that the ALJ's modification of the plaintiff's RFC to remove previously imposed
17 manipulation limitations exceeded the scope of the remand order).

18         **2.     The ALJ's Second Administrative Decision Violated the Law of the Case and**
19                 **the Rule of Mandate**

20                 **a)     Scope of the March 10, 2010, District Court Decision**

21         To determine if the ALJ's decision violated the law of the case and the rule of mandate
22 doctrines, it is necessary to examine the court's prior remand order to determine the scope of the
23 order. *See Fischer v. Barnhart*, 256 F. Supp. 2d 901, 905 (E.D. Wis. 2002).  Here, in the March 10,
24 2010, District Court Decision, the court found that "[t]he ALJ erred by failing to obtain an
25 explanation between the VE's opinion and the Dictionary of Occupational Titles."  (Case no. 1:08-
26 cv-01627-JLT, Doc. 21, 11:12-13.)

27         The court noted that the ALJ determined at Step Four of the analysis that Plaintiff retained
28 the RFC to perform a range of medium work, involving simple and repetitive one- to two- step tasks

1   where reading and writing are not required.  (Case no. 1:08-cv-01627-JLT, Doc. 21, 9:13-15; *see also*

2   AR 19.)  The court further noted that "[b]ased on this RFC finding, the ALJ concluded that Plaintiff

3   could not perform his past relevant work (Step 4) . . . . However, at Step 5, the ALJ concluded that

4   Plaintiff retained the RFC to perform other jobs in that national economy . . . . As a result, [the ALJ

5   determined that] Plaintiff was not disabled within the meaning of the Act."  (Case no. 1:08-cv-

6   01627-JLT, Doc. 21, 9:15-18; *see also* AR 21-22.)

7       The district court held that the ALJ committed error at the Step Five analysis.  (Case no.

8   1:08-cv-01627-JLT, Doc. 21, 11:12-14:18.)  The court determined that the ALJ's conclusion at Step

9   Five that Plaintiff was capable of performing other work was not supported because the jobs

10  identified by the ALJ – hand packager and automobile detailer – required the ability to read and write

11  under the DOT but the ALJ found that Plaintiff was unable to read or write.  (Case no. 1:08-cv-

12  01627-JLT, Doc. 21, 11:14-14:18.)  The court stated that:

13

14          At the hearing, after the VE gave her opinion with respect to hypothetical two (which
            was incorporated by the ALJ in her RFC finding), the ALJ asked the VE if her
15          findings were "consistent" with the DOT." . . . The VE responded simply "Yes, Your
            Honor." . . . No further questioning or explanation was sought on this point. This was
16          inadequate. While the ALJ asked if the VE's opinion was consistent with the DOT
            descriptions, she did not seek any explanation despite what appear, at the very least,
17          to be discrepancies between the restrictions in the hypothetical and the requirements
            for such work as described in the DOT. For instance, despite the limitation to simple
18          one and two-step tasks, the ALJ failed to ask the VE how this was consistent with a
            DOT requirement that a job holder at a Reasoning Level 2 occupation have the ability
19          "to carry out detailed *written* or oral instructions." In addition, the ALJ failed to
            solicit any explanation as to how Plaintiff's inability to read or write would permit
20          him to function in positions classified by the DOT as requiring the ability to
            "[r]ecognize the meaning of 2,500 (two- or three-step syllable) words.  Read at rate
21          of 95-120 words per minute. Compare similarities and differences between words
            and between series of numbers."

22  (Case no. 1:08-cv-01627-JLT, Doc. 21, 13:6-19 (citations omitted).)

23      The court held that while the VE may have been able to reconcile the apparent conflict and

24  discrepancies, the ALJ committed error because the VE had not been asked to do so.  (Case no. 1:08-

25  cv-01627-JLT, Doc.21, 13:20-21.)  The court noted that "[w]hile a claimant is not per se disabled

26  simply because he or she is illiterate, 'in order for an ALJ to rely on a job description in the

27  Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ

28  must definitively explain this deviation.'"  (Case no. 1:08-cv-01627-JLT, Doc. 21, 13:21-24 (citing

1  *Pinto*, 249 F.3d at 847 ).)  The court found that "no such explanation was attempted" and that, "[a]t

2  the very least, the ALJ needed to ask the VE for further explanation in light of the apparent

3  differences." (Case no. 1:08-cv-01627-JLT, Doc. 21, 13:24-15:1 (citation omitted).)

4      Accordingly, the court found that remand was appropriate and that "additional proceedings

5  may remedy the defects noted."  (Case no. 1:08-cv-01627-JLT, Doc. 21, 14:15-18.)  The court

6  ordered that the case be remanded "for further proceedings consistent with this decision." (Case no.

7  1:08-cv-01627-JLT, Doc. 21, 14:20-15:2.)   The court thus instructed the ALJ to explain the

8  discrepancy between the DOT's job description that indicated requirements outside of Plaintiff's

9  limitations (specifically, the ALJ's finding that Plaintiff was unable to read and write), and the ALJ's

10  finding that Plaintiff could perform those jobs.

11      Additionally, the court raised concerns about the hypotheticals posed to the VE and

12  questioned whether those hypotheticals were appropriate:

13

14      Finally, although not specifically raised by Plaintiff on appeal, somewhat related to
        this issue is the question of the sufficiency of the hypothetical(s) put by the ALJ to
15      the VE. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) (An ALJ
        posing a hypothetical question to a vocational expert "'must set out all the limitations
16      and restrictions of the particular claimant.'" Although, testing revealed Plaintiff had
        IQ scores indicating "mild" to "moderate" mental retardation (including a Full Scale
17      IQ of 58), see AR at 166, no specific mention of this is included in any of the
        hypotheticals put to the VE. Rather, the ALJ simply asked the VE to consider a
18      person "same age as claimant, same educational background, same work history. . .
        . limited to medium work and . . . limited to simple and repetitive tasks, one to
19      two-step job instructions where reading and writing is not required." Id. at 271, 272.
        Since Plaintiff's educational background indicated an eleventh grade education, it is
20      not clear that the VE, without fuller explanation, truly appreciated all Plaintiff's
        functional limitations in expressing her opinions. This point is all the more relevant,
21      given that when an additional factor where the person is "unable to relate
        appropriately to supervisors" is incorporated into the hypothetical, the VE opined that
22      such a person could perform no work. Id. at 273. ***On remand, the ALJ should
        consider whether revision of her hypotheticals to the VE would be appropriate.***

23  (Case no. 1:08-cv-01627-JLT, Doc. 21, 14:22-28, n. 7 (emphasis added).)   As such, the court

24  instructed the ALJ to consider a revision of the hypotheticals posed to the VE at Step Five, not a

25  revision of the Step Four RFC findings.

26

27

28

18

  **b)**  **The ALJ's October 22, 2010, Decision Exceeded the Scope of the District Court's March 10, 2010, Remand Order**

As noted above, the Commissioner's actions on remand "must be consistent with both the letter *and the spirit* of the higher court's decision." *Ischay*, 383 F. Supp. 2d at 1214.  In the district court's March 10, 2010, order, the court concluded that the ALJ had committed error by "fail[ing] to elicit a reasonable explanation from the [VE] in light of apparent discrepancies between the RFC limitations posited in Hypothetical 2 (which were later adopted as the ALJ's RFC finding) and the general requirements in the DOT for jobs such as hand packager and automobile detailer."  (Case no. 1:08-cv-01627-JLT, Doc. 21, 14:12-15.)  The court found that "[a]t the very least, the ALJ needed to ask the VE for further explanation of the apparent differences."  (Case no. 1:08-cv-01627-JLT, Doc. 21, 13:26-14:1.)  As a result of the ALJ's errors at Step Five, the district court found that "remand is appropriate."  (Case no. 1:08-cv-01627-JLT, Doc. 21, 14:15-17.)

As such, the district court instructed the ALJ to correct deficiencies at Step Five concerning discrepancies between the ALJ's RFC finding that Plaintiff was unable to read and write with the determination that Plaintiff could perform jobs that required reading and writing under the DOT.  The district court found that "'in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation.'"  (Case no. 1:08-cv-01627-JLT, Doc. 21, 13:22-24 (citing *Pinto*, 249 F.3d at 847).)  The court was thus requiring the ALJ to explain this Step Five discrepancy.

The ALJ, instead, revised Plaintiff's RFC at Step Four.  In the ALJ's first June 19, 2007, decision, the ALJ found that Plaintiff had the RFC to perform "a range of medium work, involving simple and repetitive one- [to] two-step tasks *where reading and writing are not required*."  (AR 19 (emphasis added).)  However, in the ALJ's second October 22, 2010, decision, the ALJ found that Plaintiff has the RFC "to lift and carry 50 pounds occasionally and 25 pounds frequently, and sit, stand and/or walk 6 hours in an 8-hour day.  He can perform work involving one-to- two-step, simple and repetitive tasks *where reading above the 2nd grade level and writing above the 1st grade level are not required.*"  (AR 283 (emphasis added).)

The ALJ's revision of Plaintiff's RFC to one less favorable to Plaintiff goes beyond the scope of the district court's remand order. *See Almarez*, 2010 WL 3894646, at *5-6. Further, the Appeals Council, through its remand order to the ALJ, explicitly remanded the case "for further proceedings consistent with the order of the [district court]." (AR 302.) As such, the ALJ "was not authorized to revisit [her prior] RFC determination *in toto*, much less to render a new RFC finding that was less favorable to plaintiff . . . , which the ALJ previously had found to be warranted. The ALJ's decision to reconsider plaintiff's limitations entirely and to remove certain limitations from her newly assessed RFC exceeded not only the scope of the [prior district court order], in violation of the law of the case and rule of mandate doctrines, but also the Appeals Council's order of remand, in contravention of 20 C.F.R. § 416.1477(b)." *Almarez*, 2010 WL 3894646, at *6; *see also Gallagher v. Astrue*, No. CV07-5688 AJW, 2009 WL 57033, at *4 (C.D. Cal. Jan. 6, 2009) (finding that the ALJ exceeded the scope of the remand order by revising the RFC to be less favorable to the plaintiff when the court had held that the ALJ had committed reversible legal error because the hypotheticals posed to the VE failed to accurately incorporate the mental and physical limitations in the RFC).

Here, the district court did not invite the ALJ to revise Plaintiff's RFC but instead directed the ALJ to explain the discrepancies between the ALJ's RFC determination that Plaintiff was unable to read and write with the finding that Plaintiff could perform jobs that required reading and writing under the DOT. The ALJ's revision of the RFC in the second October 22, 2012, administrative decision that Plaintiff could, in fact, read and write exceeds the letter and the spirit of the remand order.

Defendant's assertion that the court's order allowed the ALJ to revise the RFC to change the hypothetical questions is unpersuasive. (*See* Doc. 18, 5:10-6:4.) As noted above, the district court was concerned that the hypotheticals the ALJ posed to the VE did not fully set out all of Plaintiff's limitations and restrictions. (Case no. 1:08-cv-01627-JLT, Doc. 21, 14:22-28, n. 7 (citing *Magallanes*, 881 F.2d at 756).) The court noted that the ALJ's hypotheticals asked the VE to consider a person of Plaintiff's same age, work history, and educational background, i.e., an 11th grade education, but failed to mention that Plaintiff's IQ scores indicated mild to moderate mental retardation. (Case no. 1:08-cv-01627-JLT, Doc. 21, 14:22-28, n. 7.) The court found that it was "not

1  clear that the VE, without fuller explanation, truly appreciated all Plaintiff's functional limitations."

2  (Case no. 1:08-cv-01627-JLT, Doc. 21, 14:22-28, n. 7.)  As such, the court stated that "[o]n remand,

3  the ALJ should consider whether *revision of her hypotheticals to the VE would be appropriate*."

4  (Case no. 1:08-cv-01627-JLT, Doc. 21, 14:22-28, n. 7 (emphasis added).)   As such, the district

5  court's remand order advised the ALJ to reconsider the hypotheticals she posed to the VE, but did

6  not state that the RFC should be re-evaluated.

7       Defendant asserts that a change to a hypothetical question upon which an ALJ relies

8  necessitates that "the RFC must be changed as well," and thus a revision of the RFC was required

9  by the district court's remand.  (Doc. 18, 5:15-17.)  Defendant's assertion is not supported, however,

10  as district courts have held that the ALJ commits legal error by revising the RFC if such a revision

11  is not authorized in the remand order.  *See Ischay*, 383 F. Supp. 2d at 1218 (finding that the remand

12  order "nowhere indicated that remand was necessary to enable the ALJ to revisit any of the findings

13  he had made in steps one through four of the second decision. Instead, the stipulation provided only

14  that remand was necessary for the ALJ to obtain additional evidence on one narrow issue" of

15  obtaining evidence from the VE to resolve the issue of vocational adjustment); *Almarez*, 2010 WL

16  3894646, at *5-6 (rejecting the Commissioner's argument that the ALJ was not bound by the prior

17  RFC assessment and finding that the ALJ "was not authorized to revisit [the prior] RFC

18  determination *in toto*, much less to render a new RFC finding that was less favorable to plaintiff

19  through the omission of the . . . limitations"); *Allen v. Astrue*, No. CV 09-7239 JCG, 2010 WL

20  4825925, at *8 (C.D. Cal. Nov. 2, 2010) (finding that "the ALJ's decision to reexamine Plaintiff's

21  physical RFC and later find, despite prior decisions, that Plaintiff has a greater exertional capacity

22  is irreconcilable with the stipulation for remand"); *Gallagher*, 2009 WL 57033, at *4 (finding that

23  "the remand order did not authorize the ALJ to redetermine the nature and severity of plaintiff's . . .

24  impairments," and that revising the RFC to one less favorable to the plaintiff was "legal error [that]

25  deviat[ed] from the remand order").

26       As such, the ALJ was required to adhere to the "letter *and the spirit*" of the remand order and

27  could not disturb issues that were beyond the scope of the remand order.  *Ischay*, 383 F. Supp. 2d

28  at 1214 (citing *Quern*, 440 U.S. at 347 n. 18); *see also Ruiz*, 24 F. Supp. 2d at 1050 (The "order

vacating the prior decision and remanding the case 'for further proceedings consistent with the order of the court' [did not] suggest that review beyond the scope of the court's order was permitted or contemplated.   There was, accordingly, no basis for the ALJ to review issues that had been determined in plaintiff's favor.") (citations omitted).

### c)   Circumstances Do Not Exist to Allow the ALJ to Deviate from the Law of the Case and the Rule of Mandate

The Ninth Circuit has identified five circumstances under which a court may have discretion to depart from the law of the case and the rule of mandate: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result.  *Ischay*, 383 F. Supp. 2d at 1219-20 (citing *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir.1997)).   None of those circumstances apply here.   "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Ischay*, 383 F. Supp. 2d at 1220 (citing *Alexander*, 106 F.3d at 876) (internal quotation marks omitted).

To support the change to the RFC, Defendant contends that "the ALJ reviewed the record in more detail to capture [and] more fully explain Plaintiff's limitations in [the ALJ's] RFC and in her hypotheticals."  (Doc. 18. 8:2-3.)  As such, "the ALJ went back to the medical evidence" and "noted for the first time Dr. [Engeln's] tests that showed that Plaintiff had a second grade reading level and first grade writing level." (Doc. 18, 5:29-6:2.)  To the extent that Defendant is implying that the ALJ's review of Dr. Engeln's findings was either substantially different evidence or a changed circumstance, which would thus allow the ALJ to depart from the law of the case and the rule of mandate, there is no evidence to support that proposition.   The ALJ was fully aware of Dr. Engeln's opinion when the first decision was rendered and, in fact, the ALJ relied upon that opinion. (*See* AR 18.)  As such, the ALJ formulated the initial RFC based, in part, on Dr. Engeln's findings. The ALJ's second decision relies upon Dr. Engeln's findings in formulating the revised RFC (*See* AR 286 ("Dr. Engeln's opinion is consistent with the objective evidence, examination findings, and overall evidence of the record.").)  However, as Dr. Engeln's opinion was already part of the record

22

and was considered by the ALJ in the first decision, Dr. Engeln's findings are neither substantially different evidence nor changed circumstances.  Further, the ALJ did not provide an explanation as to why the RFC was altered from one decision to another.  (*See* AR 283-88.)  As such, re-evaluating Dr. Engeln's opinion to revise the RFC without such direction from the remand order is impermissible under the law of the case and the rule of mandate.  *Ischay*, 383 F. Supp. 2d at 1219-20.

### d)   The ALJ's Error is Not Harmless

Defendant contends that even if the ALJ improperly revised Plaintiff's RFC, such error is harmless because the VE testified that Plaintiff could perform 80 percent of the box bender jobs in California without the ability to read or write, and there were thus "thousands of jobs available that Plaintiff could perform."  (Doc. 18. 89:9-16; *see also* AR 602-03, 604.)  The VE testified that Plaintiff could perform the position of box bender, "where reading and writing were not required," and reduced the number of jobs by 20 percent "to accommodate those jobs where there is some reading and writing involved."  (AR 601-03; *see also* AR 604 (VE testifying that Plaintiff could work as a box bender based upon the hypothetical eventually used by the ALJ as the RFC in the second administrative decision).)  However, the ALJ committed the same error that was fatal to the first administrative decision – the ALJ failed to elicit testimony from the VE to explain the discrepancy between the VE's testimony and the DOT.  (*See* Case no. 1:08-cv-01627-JLT, Doc. 21, 11:12-14:18.)

At the second administrative hearing held on October 10, 2010, the VE testified that the job of box bender, DICOT 641.687-010, did not require reading and writing and then reduced the number of positions available by 20 percent to allow for jobs where reading and writing were necessary.  However, with respect to the positions of "Box Bender," the DOT describes the following reading and writing requirements for this position:

> Language: Level 1 - READING: Recognize meaning of 2,500 (two- or three-syllable) words.  Read at rate of 95-120 words per minute.  Compare similarities and differences between words and between series of numbers.
>
> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

DICOT 641.687-010.  Accordingly, the VE's testimony that the position of box bender did not require reading and writing skills is in direct conflict with the DOT, which indicates that reading and writing skills are required.

As the district court determined when remanding the ALJ's first administrative decision:

The "best source" for how a job is generally performed is "usually" the DOT. Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). For the ALJ to accept vocational expert testimony that conflicts with the DOT, the record must contain "'persuasive evidence to support the deviation.'" Id. at 846. Moreover, the ALJ has an affirmative duty to ask "whether [the VE's] testimony conflicts with the Dictionary of Occupational Titles." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). Not only must the ALJ ask the VE if his or her opinion is consistent with the DOT, the ALJ must "obtain a reasonable explanation for any apparent conflict." Id. at 1152-53.

(Case no. 1:08-cv-01627-JLT, Doc. 21, 12:12-18.)

Here, as in the first administrative decision, the ALJ failed to obtain a reasonable explanation for the apparent conflict between the VE's testimony and the DOT.[6]

**B.     Remand is Appropriate**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate."  *Id.* (alteration in original) (internal quotation marks omitted).  On the other hand, "[w]here there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

_____

[6] To the extent that Plaintiff contends that the VE's use of the word "accommodate" to describe the reduction of the total number of box bender jobs was somehow based upon the American with Disabilities Act definition of "accommodation,", Plaintiff's argument lacks merit.  (*See* Doc. 16, 7:15-9:21.)  The VE was clearly using the word "accommodate" to describe her own consideration of Plaintiff's impairments to determine the percentage of jobs that purportedly did not require Plaintiff to read and write.  (*See* AR 603 ("I'm going to do a 20 percent reduction to accommodate for those jobs where there is some reading and writing involved.").)

appropriate." *Allen*, 2010 WL 4825925, at *8 (C.D. Cal. Nov. 2, 2010) (remanding the case to the Commissioner after holding that the ALJ had violated the law of the case and the rule of mandate doctrines) (citations omitted).

As the district court noted when remanding this case to the Commissioner after the rejecting the ALJ's first administrative decision:

> The VE may have been able to reconcile these apparent conflicts or discrepancies. However, she was not asked to do so. This was error. While a claimant is not per se disabled simply because he or she is illiterate, "in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." Pinto, 249 F.3d at 847.

(Case no. 1:08-cv-01627-JLT, Doc. 21, 13:20-24.)

As such, the district court was "not concluding that the VE could not provide a reasonable explanation as to how her testimony was consistent with the requirements of the DOT for jobs [provided]. Rather, the Court [was] conclud[ing] that the ALJ failed to elicit a reasonable explanation from the ALJ in light of apparent discrepancies between the RFC limitations [adopted by the ALJ] and the general requirements in the DOT for jobs [provided]." (Case no. 1:08-cv-01627-JLT, Doc. 21, 14:10-15.)  The district court thus found that remand was appropriate because additional proceedings may have remedied the defects of the ALJ's decision.  (Case no. 1:08-cv-01627-JLT, Doc. 21, 14:17-18.)

The ALJ, however, failed to follow the court's directive and made the same error in the second administrative decision as was made in the first administrative decision – namely failing to explain the discrepancy between the VE's testimony and the DOT.  The ALJ further compounded that error by failing to comply with the law of the case and the rule of mandate doctrines by altering Plaintiff's RFC in the second administrative decision.

The Court is not convinced that further proceedings could not cure these defects, and it is thus not clear from the record that the ALJ would be required to find Plaintiff disabled if the evidence were properly evaluated.  *See Allen*, 2010 WL 4825925, at *8.  As such, remand is appropriate.

1        However, the Court is concerned that ongoing reconsideration of these claims is beginning

2    to "create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication"

3    that is applied against Plaintiff. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

4    Accordingly, the ALJ is directed to comply with the law of the case doctrine and the rule of mandate

5    and thus use the RFC determination made in the first June 19, 2007, administrative decision – "the

6    claimant has the residual functional capacity [to perform] a range of medium work, involving simple

7    and repetitive one- [and] two-step tasks where reading and writing are not required." (AR 19.)

8    Further, the ALJ is directed to obtain, if she can, evidence at Step Five that Plaintiff can perform

9    work with this RFC and to explain any discrepancies between the VE testimony and the DOT, if

10   such discrepancies continue to exist. Additionally, the ALJ is directed to consider whether revision

11   to the hypotheticals is appropriate, as indicated in the first district court decision, to insure that the

12   hypotheticals used fully capture all of Plaintiff's functional limitations, or to explain why such

13   revisions are not necessary. (*See* Case no. 1:08-cv-01627-JLT, Doc. 21, 14:22-28, n. 7.)

14                         **IV. <u>CONCLUSION</u>**

15        Based on the foregoing, the Court finds that the ALJ's decision is not supported by

16   substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further

17   proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment

18   in favor of Plaintiff Oscar Sanchez and against Defendant Michael J. Astrue, Commissioner of

19   Social Security.

20

21

22

23   IT IS SO ORDERED.

24   **Dated:**   **<u>August 24, 2012</u>**          <u>   **/s/ Sheila K. Oberto**   </u>

25                               UNITED STATES MAGISTRATE JUDGE

26

27

28